Trent H. Baker (8799)
**BAKER IP PLLC**
124 South Main Street #3147
Cedar City, UT 84720
Telephone: (801) 618-3359
trent@bakerip.com

S. Brandon Owen (9971)
Adam K. Richards (14487)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Post Office Box 45385
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
bowen@rqn.com
arichards@rqn.com

*Attorneys for Plaintiff Alfwear, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALFWEAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> IBKUL UBHOT LTD., a New York corporation; IBKUL CORP., a Florida corporation; and IBCOOL INC., a Florida corporation, <br><br> Defendants. | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** <br><br> Case No. 2:21-cv-00698-DBB-JCB <br><br> Judge David Barlow <br><br> Magistrate Judge Jared C. Bennett |

## INTRODUCTION

In its Amended Complaint, Alfwear, Inc. alleges that three Defendants' use of the mark IBKÜL on their goods infringes Alfwear's rights in its KÜHL trademarks. Defendants, in a responsive motion, argue that (1) they are not subject personal jurisdiction in Utah, (2) venue in the District of Utah is improper, and (3) the Court should transfer this case to the Southern District of Florida. Defendants' arguments fail. Personal jurisdiction does exist and venue in this District is proper because Defendants have admitted (and/or Alfwear has alleged) that Defendants purposely shipped infringing goods to Utah over multiple years and to multiple different people. Having voluntarily chosen to sell infringing goods in Utah, Defendants cannot now complain about appearing in court here, particularly when Defendants did business in Utah knowing that Alfwear resided in Utah and that Alfwear opposed Defendants' use of the IBKÜL mark. With respect to transferring this case, Defendants present no evidence or argument as to why this case should be transferred to the Southern District of Florida other than arguing that this Court lacks personal jurisdiction over Defendants and that venue in the District of Utah is improper. Defendants' motion should be denied.

## BACKGROUND

Since at least 1994, Alfwear (located in Utah) has been selling clothing and other products under the marks KÜHL and KUHL (together the "KÜHL marks"). Dkt. No. 28 ("Am. Compl.") ¶ 59. As a result of Alfwear's diligent efforts and quality products, Alfwear has grown KÜHL into a well-known and highly successful brand that enjoys a strong reputation among

customers and retailers. *Id.* ¶¶ 60, 62, 66. To protect its goodwill in the KÜHL marks Alfwear

vigorously and consistently enforces its rights in those marks. *Id.* ¶ 67.[1]

Defendants sell clothing using the confusingly similar mark IBKÜL. *Id.* ¶ 69. Defendants

did not begin using the IBKÜL mark until long after Alfwear began using the KÜHL marks and

had registered the KÜHL marks. *Id.* ¶ 70. According to Defendants' CEO, Defendant IBCOOL

Inc. (IBCOOL) sells IBKÜL clothing online, Defendant IBKUL Corp. (IBKUL) sells IBKÜL

clothing to retailers, and Defendant IBKUL UBHOT Ltd. (UBHOT) owns the rights to the

IBKÜL mark and licenses the right to use the mark to IBCOOL and IBKUL. *See* Dkt. No. 35

("Mot."), Exhibit A ("Gauba Decl.") ¶¶ 4, 9–12. Defendants' CEO admits that, from at least

2019–2021, IBCOOL and IBKUL both sold multiple IBKÜL products to multiple different

persons residing in Utah. *Id.* ¶¶ 14, 16. As for UBHOT, in an adversarial proceeding before the

USPTO (described below), it submitted as trial evidence a declaration from its president that

stated, under penalty of perjury, that UBHOT sells its IBKÜL goods to 1,400 retailers

nationwide. *See* Exhibit 1 (UBHOT's president's declaration) ¶¶ 2, 41.

Defendants have long known that Alfwear is in Utah and opposes Defendants' use of the

IBKÜL mark. UBHOT previously filed a trademark application for the mark IBKÜL. Am.

Compl. ¶ 72. On April 13, 2017, Alfwear filed an opposition to the application on the ground

that the IBKÜL mark is likely to cause confusion with Alfwear's KÜHL marks. *See* Exhibit 2

(the Notice of Opposition); Am. Compl. ¶ 73. On June 2, 2020, after the parties had submitted

---

[1] Alfwear owns numerous trademark registrations for the KÜHL marks and related marks. *Id.*
¶¶ 50–58. The Amended Complaint notes that U.S. Trademark Registration No. 3,916,866 was
cancelled by the USPTO. As explained further in the Background, that registration has since
been reinstated in response to Alfwear's petition to revive the registration.

trial evidence and argument, the Trademark Trial and Appeal Board (TTAB) sustained Alfwear's objection and rejected UBHOT's application. The TTAB held that "when used on identical or legally identical clothing products that move through the same channels of trade to the same classes of consumers, [UBHOT's] mark so resembles [Alfwear's KÜHL] mark as to be likely to cause confusion, mistake or deception." Exhibit 3 (the TTAB's decision) at 35.

UBHOT appealed the TTAB's decision to the Federal Circuit. After the parties had completed briefing but before oral argument, the USTPTO cancelled the registration on which the TTAB had based its decision because Alfwear had not timely filed a required declaration necessary to maintain the registration. Alfwear immediately petitioned to reinstate the registration. Before the USPTO could act on the petition, the Federal Circuit vacated the TTAB's decision and remanded the proceeding because the registration on which the TTAB had based its decision was cancelled. The Federal Circuit did not address the merits of UBHOT's arguments on appeal. *See* Exhibit 4 (the Federal Circuit's decision). The USPTO has since granted Alfwear's petition and reinstated the cancelled registration. *See* Exhibits 5 (the USPTO's decision); Exhibit 6 (USPTO records showing that the previously cancelled registration is now live). Alfwear has moved the TTAB to reinstate its previous opinion. That motion, which UBHOT opposes, is currently pending before the TTAB.

In this case, Alfwear asserts claims for federal and state trademark infringement, alleging that Defendants' use of the IBKÜL mark is causing consumers to mistakenly believe that Defendants' products are associated with, affiliated with, or sponsored by Alfwear. *See* Am. Compl. ¶ 102. Alfwear seeks injunctive relief to protect its goodwill in the KÜHL marks. *See id.* ¶¶ 120–21.

## RESPONSE TO STATEMENT OF UNDISPUTED FACTS

Without conceding the materiality of any of Defendants' asserted facts, Alfwear responds as follows to Defendants' statement of undisputed facts. (Alfwear does not reproduce Defendants' asserted facts because (as explained below) Defendants' motion is a motion to dismiss, not a motion for summary judgment.) For purposes of this motion only, Alfwear does not dispute Defendants' asserted fact numbers 3, 4, and 6. Alfwear disputes Defendants' asserted fact numbers 1 and 2. The president of UBHOT previously submitted a declaration in a proceeding before the TTAB stating that UBHOT "sells its goods at more than 1,400 retailers *nationwide*" (emphasis added). Exhibit 1 ¶ 41. Utah is within the United States. Based on UBHOT's president's testimony, Alfwear alleges that at least one of UBHOT's retailers is in Utah and that UBHOT has shipped product to a retailer located in Utah. *See* Am. Compl. ¶¶ 14–15. With respect to asserted fact number 5, Alfwear states that the cited deposition was taken more than four years ago, which precedes IBCOOL's and IBKUL's admitted sales to Utah from 2019–2021. Moreover, evidence of actual confusion is not necessary to establish likelihood of confusion and trademark infringement. *See Harris Rsch., Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1167 (D. Utah 2007) ("Plaintiff has presented no evidence of actual confusion. However, such evidence is not necessary to establish infringement."). With respect to asserted fact number 6, Defendants fail to specifically identify any retailers that reside in Florida that Defendants will call as witnesses. Moreover, Alfwear resides in Utah and its documents and employees reside here. Alfwear disputes Defendants' asserted fact number 8. With modern technology and travel and with Defendants' alleged ability to do business nationwide, a two-hour time difference does not create a significant burden for Defendants.

## ARGUMENT

**I.  Defendants' motion should be treated as a motion to dismiss under Rules 12(b)(2) and 12(b)(3) and not as a motion for summary judgment.**

Defendants claim to be moving to dismiss under Rule 12(b)(2) and for summary judgment under Rule 56 on their defense that this Court lacks personal jurisdiction over Defendants. *See* Mot. at 5, 8. Defendants' apparent reason for wanting this Court to treat their motion as one for summary judgment (as opposed to as a motion to dismiss) is so that Alfwear cannot rely on unrebutted allegations in its Amended Complaint to establish personal jurisdiction. Defendants' request to have its motion considered as a motion for summary judgment should be rejected.

First, even at the pleading stage, parties can submit declarations and other written materials in connection with a motion to dismiss under Rules 12(b)(2) and 12(b)(3) without the court converting the motion to one for summary judgment. *See Marcovecchio v. Wright Med. Grp., Inc.*, No. 2:18-CV-00274, 2019 WL 1406606, at *2 (D. Utah Mar. 28, 2019) (unpublished). Thus, defendants can challenge jurisdictional allegations without moving for summary judgment. Here, Defendants submitted a declaration to try and rebut some of Alfwear's jurisdictional allegations. The Court can consider that declaration without converting Defendants' motion to one for summary judgment.

Second, courts have held that at the pleading stage, unrebutted allegations should be accepted as true. *See* Argument, Part II. Having had an opportunity to try and rebut Alfwear's jurisdictional allegations, Defendants cannot use a summary judgment motion to avoid the consequences of leaving jurisdictional allegations unrebutted.

Third, courts have held that a motion for summary judgment on the issue of personal jurisdiction, particularly at this stage of the proceeding before any discovery has taken place, is improper. *See Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176–77 (D. Kan. 1999) (rejecting request that the court analyze Rule 12(b)(2) and 12(b)(3) motions as motions for summary judgment as being "without merit," stating that it "found nothing in the Federal Rules of Civil Procedure that makes Rule 56 applicable to motions filed under Rule 12(b)(2) and (3) when matters outside of the pleadings are presented").[2]

Defendants assert that "[t]he Tenth Circuit follows Second Circuit law that a plaintiff may not rely on Complaint allegations where defendants move for summary judgment or requests an evidentiary hearing." Mot. at 8. This argument misrepresents Tenth Circuit law. In *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017), the Tenth Circuit affirmed the district court's grant of a motion to dismiss for lack of personal jurisdiction. In a footnote, the Tenth Circuit cited to *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206

---

[2]  *See also Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 n.5 (2d Cir. 1983) ("We recognize that a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), rather than a motion for summary judgment, Fed.R.Civ.P. 56, is the more appropriate procedural vehicle for contesting personal jurisdiction."); *Velasco Briseno v. Mktg. & Mgmt. Sols., LLC*, 2019 WL 2646661, at *2 (D. Kan. June 27, 2019) (unpublished) ("The defenses of Rule 12(b)(2), 12(b)(4), and 12(b)(5) are generally not proper grounds for summary judgment."); *Fraserside IP, L.L.C. v. Youngtek Sols., Ltd.*, 2013 WL 139510, at *3 (N.D. Iowa Jan. 10, 2013) (unpublished) ("Courts have held that a motion raising lack of personal jurisdiction as a defense should be considered a motion to dismiss under rule 12(b)(2) and not a summary judgment motion under rule 56."); *Romah v. Scully*, 2007 WL 3493943, at *4 (W.D. Pa. Nov. 13, 2007) (unpublished) ("[A] rule 12(b)(2) motion cannot be treated as one for summary judgment." (quoting *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.1990))); *Hicks v. Assistant Atty. Gen. of Colorado*, 2010 WL 5067611, at *3 (W.D. Mo. Dec. 6, 2010) (unpublished) ("[A] motion for summary judgment for lack of personal jurisdiction is not theoretically proper."); 10A Fed. Prac. & Proc. Civ. § 2713 (4th ed.) ("In general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning the court's . . . personal jurisdiction or venue . . . unless those issues are intertwined with the merits.").

(2d Cir. 2003), for the proposition that "[w]here plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing was conducted, the plaintiff's prima facie showing . . . must include an averment of facts that . . . would suffice to establish jurisdiction over the defendant [if credited]." *Id.* at 903 n.9 (quotations omitted). The Tenth Circuit in *Old Republic* never held that a defendant could move for summary judgment at the pleading stage or that a plaintiff cannot rely on the allegations of a complaint at the pleading stage before jurisdictional discovery or an evidentiary hearing has taken place.

The Second Circuit case that Defendants cite, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196–98 (2d Cir. 1990), does not support Defendants' arguments. In *Ball*, the court expressly recognized that "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established ***solely*** by allegations." *Ball*, 902 F.2d at 197 (emphasis added) (citation omitted). In contrast to the pleading stage before discovery, *Ball* recognized that "***[a]fter discovery***, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.* (emphasis added) (citation omitted).

Finally, Alfwear opposes Defendants' request for an evidentiary hearing. Defendants provide no basis for seeking an evidentiary hearing. Nor do Defendants state what issues need an evidentiary hearing. If the court does hold an evidentiary hearing, Alfwear requests an opportunity to seek discovery from Defendants and third parties before the evidentiary hearing.

**II.    Alfwear has made a prima facie showing of personal jurisdiction as to all three Defendants.**

"At the pleadings stage, a plaintiff need only establish a prima facie showing of personal jurisdiction." *Lovesac Co. v. www.lovessac.com*, 2022 WL 504192, at *2 (D. Utah Feb. 18, 2022) (unpublished) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). "The court accepts the well-pleaded allegations of the plaintiff's complaint as true unless the defendant contradicts those allegations in affidavits." *Cont'l Bank v. Heag Pain Mgmt. Ctr., PA*, 2020 WL 2495849, at *2 (D. Utah May 14, 2020) (unpublished) (citing *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990)). Moreover, "factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *US Magnesium, LLC v. ATI Titanium, LLC*, 2017 WL 913596, at *2 (D. Utah Mar. 7, 2017) (unpublished) (quoting *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)). "The Court may not weigh the factual evidence before it." *Pierce v. Cambria Co.*, 2004 WL 7338316, at *1 (D.N.M. Jan. 27, 2004) (unpublished).

Determining whether personal jurisdiction exists in Utah requires only a "single due process inquiry." *Old Republic*, 877 F.3d at 903; Utah Code § 78-27-22 ("[Utah law asserts] jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment."). "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). With respect to specific jurisdiction, "the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum

state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Id.* at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Once a plaintiff establishes that defendants have minimum contacts with the forum state, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080 (quotation and internal quotation marks omitted).

### A.    Defendants have minimum contacts with Utah.

Defendants have minimum contacts with Utah because they have purposefully directed infringing activities at Utah and Alfwear's injuries arise out of those infringing activities.

### 1.    IBCOOL operates an interactive website to attract Utah customers and has shipped infringing products to customers in Utah.

IBCOOL is subject to specific personal jurisdiction in Utah because it has purposefully directed acts that infringe Alfwear's trademarks at residents of Utah. Defendants do not dispute the following allegations of the Amended Complaint:

- IBCOOL operates the website www.ibkul.com, *see* Am. Compl. ¶ 24, where it sells clothing under the IBKÜL mark, *id.* ¶ 69. Below are example pages from the website:



10

*See* Exhibit 7 at 2, 4.

- The www.ibkul.com website includes reviews from persons residing in Heber, Park City, and St. George, which are all cities in Utah. Am. Compl. ¶ 26. These reviews show the location of the reviewer, as illustrated below:



*See* Exhibit 7 at 2, 5-7.

- IBCOOL has fulfilled orders made on www.ibkul.com by Utah residents and has shipped products bearing the IBKÜL mark to Utah residents over the course of multiple years. Am. Compl. ¶¶ 27, 30.

- IBCOOL charged Utah residents for products purchased on www.ibkul.com, *id.* ¶ 28, and accepted payment for those products, *id.* ¶ 29.

- The www.ibkul.com website lists Utah as a shipping destination on its checkout page. *Id.* ¶ 33. The screenshot below shows Utah can be selected from a dropdown menu on the checkout page:

11



*See* Exhibit 8.

- IBCOOL has sent marketing, including marketing emails, that contain the IBKÜL mark to persons located in Utah. Am. Compl. ¶¶ 35–38.

- IBCOOL has stored customer information for persons located in Utah. *Id.* ¶ 47.

- IBCOOL has received returns and exchanges of product sold under the IBKÜL mark from persons located in Utah. *Id.* ¶ 48.

- IBCOOL created contacts with Utah in connection with the IBKÜL mark knowing that Alfwear was located in Utah and that Alfwear asserts that use of the IBKÜL mark in connection with Defendants' goods infringes Alfwear's KÜHL marks. *Id.* ¶ 84.

In addition to these unrebutted allegations, IBCOOL's CEO states that from 2019 to 2021, IBCOOL had more than 200 orders from Utah residents totaling a confidential sum. *See* Gauba Decl. ¶ 16.

These contacts establish personal jurisdiction over IBCOOL. IBCOOL voluntarily chose to market itself to Utah residents using a website that displays the IBKÜL mark. It chose to list Utah as a shipping destination and to display on its website that individuals in Utah had purchased IBKÜL products. IBCOOL chose to accept orders from persons located in Utah, to send infringing products to addresses it knew were in Utah, and to accept payment from Utah residents. And IBCOOL concedes that it did so over the course of multiple years. Moreover, IBCOOL did so knowing that its infringing activities in Utah were causing injury to Alfwear in Utah. IBCOOL is not being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations and internal quotation marks omitted). IBCOOL "manifestly [] availed [itself] of the privilege of conducting business [in Utah]," *id.* at 476, and "should reasonably anticipate being haled into court [here]," *id.* at 474 (quotation omitted).

The Eleventh Circuit held that specific personal jurisdiction existed over a defendant based on facts like those at issue here. In *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013), the plaintiff alleged that the defendant had sold counterfeit products using the plaintiff's mark through an interactive website. The plaintiff further alleged that the defendant had received orders from multiple Florida residents to ship goods into Florida and that the defendant had shipped goods to Florida. The court reasoned that "[t]hese collective contacts establish that [the defendant] purposefully availed himself of the privileges of doing business in

south Florida." *Id.* at 1357. Here, IBCOOL has similarly voluntarily and knowingly benefitted

from the Utah market and cannot now complain about having to account for its conduct here. *See*

*Burger King*, 471 U.S. at 474 ("[T]he Due Process Clause may not readily be wielded as a

territorial shield to avoid interstate obligations that have been voluntarily assumed.").

### i. IBCOOL's attempt to characterize its Utah sales as minimal does not defeat jurisdiction.

Defendants argue that IBCOOL lacks minimum contacts with Utah because IBCOOL's

sales to Utah residents represent only "about 43/100th of one percent (.43%) of IBKUL

WHOLESALE's total sales." Gauba Decl. ¶ 16. But courts routinely hold that personal

jurisdiction exists even when a defendant characterizes its sales as minimal.[3] For example, in

---

[3] *See, e.g.*, *Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1226–27 (D. Utah 2016) (website and 37 sales to forum state); *The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598, at *6 (D. Utah Oct. 29, 2020) (unpublished) (sales to forum residents of 91 infringing products, 3 infringing products, and 38 infringing products respectively among three defendants); *Lovesac Co. v. www.lovessac.com*, No. 2:22-CV-00056-JNP, 2022 WL 504192, at *2 (D. Utah Feb. 18, 2022) (unpublished) (website included a drop-down menu on a checkout page listing Utah as a shipping destination and plaintiff alleged defendants had made "numerous sales into Utah"); *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 755, 757–58 (7th Cir. 2010) (sale of 300 packs of cigarettes to an Illinois resident through defendant's e-commerce website); *TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*, 537 F. Supp. 2d 635, 637–38, 642 (D. Del. 2008) (four sales to forum state that accounted for .0015 percent of revenue in 2004 and .000008 percent of revenue in 2006); *Confectionary Arts Int'l, LLC v. CK Prod. LLC*, 2018 WL 1141357, at *7–*8 (D. Conn. Mar. 1, 2018) (unpublished) (0.6% of total sales of product line were to customers in the forum state and 1% of a newer product line were sales to customers in forum state); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, 2021 WL 3931910, at *2–*3 (W.D. Tex. Sept. 1, 2021) (unpublished) (defendant sent a sample of the accused product into the forum for the purpose of eliciting business contacts); *WhatRU Holding, LLC v. Bouncing Angels, Inc.*, 2014 WL 641517, at *3 (D. Minn. Feb. 19, 2014) (unpublished) ("Bouncing Angels purposefully directed its activities at the forum, by accepting an order and shipping the accused product to the forum."); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1076 n.2, 1078 (C.D. Cal. 1999) (two sales to the forum state); *Sarvint Techs., Inc. v. Omsignal, Inc.*, 161 F. Supp. 3d 1250, 1262–64 (N.D. Ga. 2015) (sales to forum residents accounted for 0.5% of its total sales and 0.35% of total revenue); *TSDC, LLC v. Choose Hope, Inc.*, 2015 WL 2097697, at *4–*5 (N.D. Ohio May 5, 2015) (unpublished) (infringing sales to forum customers

*Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 171 (2d Cir. 2010), the Second Circuit

reversed the district court's grant of a motion to dismiss for lack of personal jurisdiction in a

trademark infringement case. The Second Circuit held that "by offering bags for sale to New

York consumers on [a] website and by selling [52] bags—including at least one counterfeit []

bag—to New York consumers, [the defendant] has purposefully availed himself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its

laws. . . . In actually sending items to New York, there can be no doubt that [the defendant's]

conduct was *purposefully directed toward the forum State.*" *Id.* at 171 (brackets, internal

quotation marks, and internal citations omitted).

### ii.    Defendants' cited cases are distinguishable.

The cases Defendants cite are distinguishable. Unlike here, the court in *Old Republic Ins.*

*Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017), did not consider a trademark infringer

that had shipped infringing products to the forum state. *See id.* at 914 n.29. Rather, the Tenth

Circuit considered whether personal jurisdiction existed based on payments by forum residents

---

averaged less than $2,000 per year and accounted for less than 0.3% of total company sales and
only 4.3% of total infringing sales nationwide and purchases of infringing products by forum
wholesalers averaged less than $4,900 per year and accounted for only 0.07% of company sales);
*Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 715 (E.D. Va.
2017) (251 customers since defendant's founding in 2010 (which accounted for 1.21% of its total
number of customers since 2013) and 99 shipments to Virginia, which was 1.17% of the
company's total number of shipments); *Ceramica Falcinelli, S.P.A. v. Am. Marazzi Tile, Inc.*,
1999 WL 795479, at *4 (D.N.J. Sept. 29, 1999) (unpublished) (delivery of infringing products to
31 Home Depot stores in the forum); *Diaz v. Bautista*, 2010 WL 11552969, at *2–*3 (C.D. Cal.
Oct. 20, 2010) (unpublished) (sales to eight individuals in the forum); *Caddy Prod., Inc. v.
Greystone Int'l, Inc.*, 2005 WL 3216689, at *2 (D. Minn. Nov. 29, 2005) (unpublished) (at least
one shipment of infirming product to forum); *Best Chair Inc. v. Factory Direct Wholesale, LLC*,
121 F. Supp. 3d 828, 836–38 (S.D. Ind. 2015) (infringing sales of 1,500 products representing
$102,500 in sales and approximately 1.7% of total revenue).

for access to online manuals. Thus, *Old Republic* did not consider a situation in which the defendant itself voluntarily reached out directly to the forum state.

This distinction is significant. Even after *Old Republic*, district courts in the Tenth Circuit have exercised personal jurisdiction over defendants that ship at least some products to the forum state. In *Poulin Ventures, LLC v. MoneyBunny Co.*, 2020 WL 6286440 (D.N.M. Oct. 27, 2020) (unpublished), the court held that personal jurisdiction existed in a trademark infringement case. The defendant sold products using a website that listed the forum state (New Mexico) as a ship-to destination and admitted to selling about 100 glasses to New Mexico residents. *Id.* at *5. The defendant argued that "it did not aim the bulk of its activities at New Mexico because it sold only 100 glasses and earned less than .5% of its sales in the forum." *Id.* at *6. The court rejected the argument, reasoning that "[d]espite a purported small volume of sales in New Mexico, the fact remains that [the defendant] persistently sold its products to forum residents by maintenance of a website designed to engage in commerce, and its internet activities in New Mexico are connected to its sales in the forum." *Id.* Similarly, in *PopSockets LLC v. Wilcox*, 2019 WL 5741328 (D. Colo. Nov. 4, 2019) (unpublished), *report and recommendation adopted*, 2019 WL 7047309 (D. Colo. Dec. 23, 2019) (unpublished), the court held that personal jurisdiction existed where the defendants had shipped an infringing product to the plaintiff in the forum state. *Id.* at *5.

The Seventh Circuit's decisions in *be2LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011), and *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), are similarly distinguishable, as explained in *NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 794 (N.D. Ill. 2021). In that case, the court held that jurisdiction existed over a defendant that had shipped at

least one allegedly infringing item to Illinois (the forum state) and whose website listed Illinois in its "ship-to" options. *Id.* at 793 (N.D. Ill. 2021). The court rejected the defendant's argument that *be2 LLC* and *Real Action Paintball* required a different result. The court stated that "[i]n *be2 LLC*, the Seventh Circuit held that a dating web site did not have minimum contacts with Illinois merely because members of the site provided Illinois addresses." *Id.* at 794. The court then distinguished *be2 LLC*, stating that "there, unlike here, the defendant did not ship any products to Illinois." *Id.* With respect to *Real Action Paintball*, the court stated that "the Seventh Circuit found that sale of *noninfringing* goods to residents of Indiana did not establish specific personal jurisdiction for a trademark infringement claim regarding the sale of separate *infringing* goods." *Id.* The court concluded that because its case "involves both the sale of infringing goods and the sale of those goods to residents of Illinois, *be2 LLC* and *Real Action Paintball* are materially distinguishable." *Id.* For those same reasons, *be2 LLC* and *Real Action Paintball* are distinguishable from this case.

### 2. IBKUL has established relationships with multiple Utah retailers and has shipped infringing products to retailers located in Utah.

IBKUL is subject to specific personal jurisdiction in Utah because it has purposefully directed acts that infringe Alfwear's trademarks at residents of Utah. Defendants do not dispute the following allegations of the Amended Complaint:

- IBKUL has shipped IBKÜL products to wholesale customers in Utah. Am. Compl. ¶ 39.

- IBKUL has charged wholesale customers in Utah for IBKÜL product, *id.* ¶ 40, and has received and accepted payment from wholesale customers located in Utah for IBKÜL product, *id.* ¶ 41.

- IBKUL has traveled to Utah to visit retailers that sell IBKÜL products. *Id.* ¶ 42.

- IBKUL has developed relationships with retailers with locations in Utah. *Id.* ¶ 43.

- IBKUL has solicited business of persons located in Utah. *Id.* ¶ 44.

- IBKUL has agreements with wholesale customers located in Utah that sell IBKÜL products. *Id.* ¶ 45.

- IBKUL has made multiple sales of IBKÜL products to the same wholesale customers located in Utah over multiple years knowing that the wholesale customers are located in Utah. *Id.* ¶ 46.

- IBKUL has stored customer information for persons located in Utah. *Id.* ¶ 47.

- IBKUL has received returns and exchanges of IBKÜL product from persons located in Utah. *Id.* ¶ 48.

- IBKUL has sent IBKÜL marketing to persons located in Utah. *Id.* ¶ 38.

In addition to these unrebutted allegations of the Amended Complaint, IBKUL's CEO expressly acknowledges that from 2019 to 2021, IBKUL "sold product to four different retailers in Utah resulting in eleven (11) orders totaling" a confidential sum. Gauba Decl. ¶ 14.

These contacts establish personal jurisdiction over IBKUL. IBKUL voluntarily chose to develop relationships with multiple retailers in Utah, solicit their business, make multiple sales of infringing products to them over the course of several years, and accept payment from Utah residents for those products. IBKUL does not challenge Alfwear's allegation that IBKUL has agreements with these customers and travelled to Utah to visit these retailers. And IBKUL's CEO does not state that it has ended its relationships with its Utah retailers. IBKUL took these actions knowing that its infringing activities in Utah were causing injury to Alfwear in Utah. As with IBCOOL, IBKUL "manifestly [] availed [itself] of the privilege of conducting business [in

18

Utah]," *id.* at 476, and cannot now complain that it must appear in court here. Defendants argue

that IBKUL lacks minimum contacts with Utah because IBKUL's sales to Utah retailers

represent only "about 2/100th of one percent (.02%) of IBKUL WHOLESALE's total sales."

Gauba Decl. ¶ 14. As explained above, the fact that IBKUL's sales to Utah retailers are small in

number does not make them any less purposeful or direct. *See supra* Argument Parts II.A.1.i, ii;

*see also Mola, Inc. v. Kacey Enterprises, LLC*, 2011 WL 3667505, at *5 (W.D.N.Y. Aug. 21,

2011) (unpublished) (holding in trade dress infringement case that shipment of seven infringing

product worth $1,001 supported personal jurisdiction).

### 3.  UBHOT has conducted business in Utah and exercises control over IBCOOL's and IBKUL's infringing activity.

UBHOT has voluntarily created contacts with Utah, and is therefore subject to personal

jurisdiction in Utah, for at least two reasons.

First, a sworn declaration submitted by UBHOT's president states that UBHOT sells its

goods to 1,400 retailers ***nationwide***. *See* Exhibit 1 ¶ 41. Based on this declaration, Alfwear

alleges that UBHOT has shipped products and catalogs to and communicated with at least some

retailers in Utah. *See* Am. Compl. ¶¶ 13–23. Defendants dispute the declaration of UBHOT's

president based on the declaration of UBHOT's CEO. At this stage, the Court should resolve the

conflicting declarations in Alfwear's favor. As a result, UBHOT is subject to personal

jurisdiction in Utah for the same reasons that IBKUL is subject to personal jurisdiction in Utah.

Second, UBHOT's CEO states that UBHOT licenses the IBKÜL mark to IBCOOL and

that UBHOT has a right to exercise control over use of the IBKÜL mark. *See* Mot., Exhibit A

¶¶ 4–9, 10–12. "A licensing agreement for intellectual property with a licensee that operates in

the forum state can, in certain instances, give rise to personal jurisdiction over the licensor."

*Alcon Vision, LLC v. Lens.com, Inc.*, 2020 WL 4810778, at *4 (E.D.N.Y. Aug. 11, 2020) (unpublished). "A key factor in evaluating whether a licensor's status confers jurisdiction is the amount of control the licensor retains over the licensee." *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011). Here, Alfwear alleges that UBHOT is more than a passive licensor. Alfwear alleges that UBHOT controls IBCOOL's and IBKUL's sales and marketing of the IBKÜL products. *See* Am. Compl. ¶¶ 77–82. IBCOOL's and IBKUL's contacts with the forum can therefore be attributed to UBHOT. As a result, UBHOT is subject to personal jurisdiction in Utah based on the actions of IBCOOL and IBKUL.

### 4. Defendants' arguments about a lack of injuries to Alfwear are irrelevant and unavailing.

Specific jurisdiction requires that a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (internal quotation marks and quotation omitted). Defendants do not dispute that Alfwear's claims are based on Defendants' use of the IBKÜL mark, including Defendants' use of the IBKÜL mark in marketing and selling goods to Utah residents. Defendants, however, argue that Alfwear has no injuries from Defendants' Utah related activities. Mot. at 15. This argument fails.

First, Defendants cite no authority that they can rebut Alfwear's showing that its claims arise out of Defendants' contacts with Utah by disputing the merits of Alfwear's claims.

Second, the only basis that Defendants give for their claim that Alfwear has no injuries is that Alfwear's 30(b)(6) representative testified in a TTAB proceeding that she was not aware of instances of actual confusion. Mot. at 15. She gave that testimony more than four years ago (in December 2017). Defendants' evidence regarding its sales to Utah concern sales from 2019–

2021. Thus, the testimony in the TTAB proceeding does not show that Defendants' infringing sales to Utah have not caused consumer confusion. Nor does it undermine Alfwear's allegations that Defendants' unauthorized use of the IBKÜL mark is causing consumers to mistakenly believe that Defendants' products are associated with, affiliated with, or sponsored by Alfwear, *see* Am. Compl. ¶ 102, or that this confusion is causing Alfwear to suffer loss of income and goodwill and is unfairly benefiting Defendants, *id.* ¶ 103.

Third, "[i]n trademark cases, it is not necessary for plaintiff to prove actual damage or injury to state a prima facie case of infringement. . . . Trademark infringement is a no-fault commercial tort with injury presumed to flow from a likelihood of confusion over source, sponsorship, affiliation or connection. Actual confusion need not be shown to prove infringement." 5 McCarthy on Trademarks and Unfair Competition § 30:2.50 (5th ed.) (footnote omitted). Here, Alfwear has alleged a likelihood of confusion. It is not required to show actual confusion to succeed on its claims.

> **B.    Defendants have not made a compelling case that jurisdiction is unreasonable.**

"[W]ith minimum contacts established, it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks and quotation omitted). Defendants fail to make a compelling case of unreasonableness. First, Defendants argue that litigating in the Southern District of Florida would be much less burdensome than litigating in the District of Utah because the districts are two time zones apart. *See* Mot. at 16. But a time difference of two hours for companies that are doing business nationwide cannot be characterized as burdensome. Second, Defendants argue that the District of Utah has a "low"

interest in resolving this dispute given Defendants' allegedly limited sales in Utah. *Id.* This argument improperly disregards that Alfwear resides in Utah. Indeed, "[a] State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). Third, Defendants argue that Alfwear's interest in receiving effectual relief favors litigating this case in Florida because there are no personal jurisdiction or venue issues as to Defendants in Florida. *See* Mot. at 17. But as explained in this opposition, Defendants are subject to personal jurisdiction here and venue is proper in this district. Fourth, Defendants argue that Florida is a more efficient place to litigate because IBKUL has numerous retailers there. *Id.* But Defendants fail to identify any specific retailers that they will call as witnesses. And Defendants ignore that Alfwear resides in Utah and that its officers, employees, and documents are located here. Because Defendants fail to make a compelling case of unreasonableness, the Court should exercise personal jurisdiction over Defendants.

## III.     Venue in the District of Utah is proper.

Defendants argue that venue in the District of Utah is improper because (1) UBHOT has no sales in the District of Utah, (2) IBKUL's sales in the District of Utah are less than 0.2% of its total sales from 2019 to 2022, and (3) IBCOOL's sales in the District of Utah are less than .43% of its total sales from 2019 to 2021. *See* Mot. at 19.

The Tenth Circuit has instructed courts to "conduct[] a two-part analysis when reviewing challenges to venue under Section 1391(b)(2)." *PopSockets*, 2019 WL 7168661, at *5 (citing *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010)). First, a court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those

claims." *Id.* (quotation omitted). Second, it "determine[s] whether substantial events material to those claims occurred in the forum district." *Id.* (quotation omitted). "The substantiality requirement is satisfied upon a showing of acts or omissions that have a close nexus to the alleged claims." *Id.* (internal quotation marks and quotation omitted). "[V]enue is not limited to the district with the most substantial events or omissions." *Id.* (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1165).

Here, Alfwear alleges that Defendants' unauthorized use of the IBKÜL mark is causing consumers to mistakenly believe that Defendants' products are associated with, affiliated with, or sponsored by Alfwear. *See* Am. Compl. ¶ 102, "[I]n a trademark suit brought under the Lanham Act, a substantial part of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or in many." *PopSockets*, 2019 WL 7168661, at *6 (quoting *Allstar Mktg. Grp., LLC v. Your Store Online*, *LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009)); *see also Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1094 (D. Or. 2016) (same).[4] In *PopSockets*, the plaintiff alleged that the defendant sold at least a portion of infringing products to consumers in Colorado and that the defendant's sale of infringing products was causing consumer confusion. Based on these allegations, the court held that venue in the District of Colorado was proper.

---

[4] *See also Rene Schonefeld Industrie-en Handelsonderneming BV v. Jamil*, 2012 WL 13028921, at *5 (D. Conn. Oct. 24, 2012) (unpublished) ("Under section 1391(b)(2), venue is proper for a trademark infringement claim in each jurisdiction where infringement is properly alleged to have occurred."); *Safety Equip. Inst. v. Signature Lacrosse, LLC*, 438 F. Supp. 3d 685, 688 (E.D. Va. 2020) ("In a trademark infringement action, venue is proper in the district where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." (internal quotation marks omitted)).

Similarly, in this case, Defendants acknowledge that IBCOOL and IBKUL have sold at least some infringing products in Utah. And Alfwear alleges, based on UBHOT's president's declaration, that UBHOT has also sold infringing products in Utah. Accordingly, venue as to Defendants is proper, even if Defendants sold a limited number of goods to this venue.[5]

Defendants' cited cases are distinguishable. In *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312 (D.C. Cir. 1985), the court considered the fact that the parties' employees were all located outside of the venue in finding venue improper. Here, in contrast, Alfwear's employees and documents are located in the District of Utah. In *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207 (D.D.C. 2014), the plaintiff pointed to only two infringing sales, one purchase made by a member of the plaintiff and one purchase that was cancelled. Here, in contrast, IBCOOL admits to over 100 infringing sales to Utah (along with a website that displays reviews from persons residing in the District of Utah) and IBKUL admits to 11 infringing sales to multiple retailers. In *Detroit Coffee Co., LLC v. Soup for You, LLC*, 2018 WL 941747 (S.D.N.Y. Feb. 16, 2018) (unpublished), the court found there was no targeting of the chosen venue by the defendants. Here, in contrast, IBCOOL maintains a website that displays reviews from persons residing in the District of Utah and does not dispute that it sent email marketing to persons residing in Utah, and IBKUL does not dispute that it has traveled to Utah to

---

[5] *See Adidas*, 169 F. Supp. 3d at 1095 ("Venue may be proper even where the defendant sells only a small amount of merchandise into the forum."); *Thirsty Mule Winery, L.L.C. v. Wild Wild W., L.L.C.*, 2019 WL 10302269, at *1–*3 (W.D. Tex. May 13, 2019) (unpublished) (holding venue was proper even though infringing sales in the district accounted for less than one percent of defendant's total sales and distribution volume); *Mola*, 2011 WL 3667505, at *7 ("Defendants sold seven allegedly infringing products worth $1,001 in New York. These sales are sufficient to qualify as 'a substantial part of the events.'").

24

visit retailers that sell IBKÜL products, has agreements with wholesale customers located in

Utah that sell IBKÜL products, and has sent IBKÜL marketing to persons located in Utah.

**IV.     The Court should deny Defendants' motion to transfer venue.**

The Court should deny Defendants' motion to transfer venue.

First, Defendants assert that if personal jurisdiction is lacking or venue is improper as to

any defendant, the Court should transfer this case to the Southern District of Florida under

28 U.S.C. § 1406(a). Mot. at 19. But as explained above, personal jurisdiction exists as to all

Defendants and venue is proper. Nevertheless, if personal jurisdiction is lacking or venue is

improper as to IBKUL or IBCOOL, Alfwear requests that the Court transfer this case to the

Southern District of Florida. If, however, personal jurisdiction is lacking or venue is improper

only as to UBHOT, Alfwear requests that UBHOT agree to submit to jurisdiction and venue

here. If UBHOT does not agree to waive its defenses of lack of personal jurisdiction and

improper venue, Alfwear requests that the claims against UBHOT be severed and transferred to

the Southern District of Florida or, in the alternative, be dismissed without prejudice. *See Trujillo*

*v. Williams*, 465 F.3d 1210, 1216 (10th Cir. 2006) (stating that where personal jurisdiction does

not exist or venue is improper as to some defendants, those defendants can be severed and

transferred to another court or dismissed). In any case, Alfwear should be permitted to pursue its

claims against IBCOOL and IBKUL in this Court.

Second, Defendants argue, in one conclusory line, that "[e]ven if the court finds that

venue is proper as to all defendants, transfer of venue is proper under 28 U.S.C. § 1404." Mot.

at 20. "The party moving for transfer of venue bears the burden of demonstrating that the

existing forum is inconvenient. The plaintiff's choice of forum should not be disturbed unless the

evidence strongly favors the moving party." *Briesch v. Auto. Club of S. California*, 40 F. Supp. 2d 1318, 1322 (D. Utah 1999) (internal citation omitted). Here, Defendants fail to present any evidence or argument as to why this forum is inconvenient or why a transfer of venue is appropriate. As a result, Defendants' motion should be denied. *See Briesch v. Auto. Club of S. California*, 40 F. Supp. 2d 1318, 1322 (D. Utah 1999) ("Since defendant ACSC fails to provide any affidavits or other evidence demonstrating the inconvenience of the Utah forum either to itself or to its witnesses, its motion to transfer venue fails to meet the moving party's burden of proof."); *Cricut, Inc. v. Enough for Everyone, Inc.*, 2022 WL 798877, at *3 (D. Utah Mar. 16, 2022) (unpublished) (denying motion to transfer where defendants failed to provide a legally supported basis for transfer). Moreover, "[m]erely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change in venue." *Cricut, Inc. v. Enough for Everyone, Inc.*, 2022 WL 798877, at *1 (D. Utah Mar. 16, 2022) (unpublished) (quotation omitted). Here, Alfwear's employees and documents reside in Utah. Therefore, any change in venue would act only to shift the inconvenience to Alfwear.

## <u>CONCLUSION</u>

Personal jurisdiction exists and venue in the District of Utah is proper as to Defendants because they voluntarily chose to ship infringing products that are the subject of this lawsuit to Utah residents. Other than alleging that they are not subject to personal jurisdiction here, Defendants provide no basis for transferring this case to the Southern District of Florida. Therefore, Defendants' motion to transfer venue should be denied.

DATED this 2nd day of June, 2022.

**RAY QUINNEY & NEBEKER P.C.**

/s/ S. Brandon Owen
S. Brandon Owen
Adam K. Richards


/s/ Trent H. Baker
Trent H. Baker
**Baker IP PLLC**

*Attorneys for Plaintiff Alfwear, Inc.*

1601880