THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALFWEAR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>IBKUL UBHOT LTD., a New York corporation; IBKUL CORP., a Florida corporation; and IBCOOL INC., a Florida corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART [35] DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Case No. 2:21-cv-00698-DBB-JCB<br><br>District Judge David Barlow |

This matter is before the court on Defendants' motion to dismiss for lack of jurisdiction and venue and, in the alternative, Defendants' motion to transfer venue to the Southern District of Florida. Plaintiff Alfwear, Inc. ("Alfwear") sells a product line with the mark "KÜHL."[1] Defendants IBKUL UBHOT Ltd. ("UBHOT"), IBKUL Corp. ("IBKUL"), and IBCOOL Inc. ("IBCOOL") (collectively "Defendants") have a product line with the mark "IBKÜL."[2] Alfwear alleges that Defendants' use of a similar mark infringes Alfwear's trademark rights, violates unfair competition laws, and constitutes dilution.[3] Defendants assert that there is no personal jurisdiction in Utah, and that venue in the District of Utah is improper.[4] They ask the court to dismiss Alfwear's claims or to transfer venue to the Southern District of Florida.[5] Having

---

[1] Am. Compl. ¶¶ 60–64, ECF No. 28, filed Mar. 28, 2022.
[2] *Id.* at ¶ 69.
[3] *Id.* at ¶¶ 104, 110, 113, 119.
[4] Def. Mot. to Dism. & Mot. to Transfer Venue 5, ECF No. 35, filed Apr. 26, 2022.
[5] *Id.*

reviewed the parties' briefing, the court concludes that the motion may be resolved without oral argument.[6] Defendants' motion to dismiss is denied as to IBKUL and IBCOOL and granted as to UBHOT. The court denies Defendants' motion to transfer venue.

**BACKGROUND**

Alfwear is a Utah company that started selling products with the mark "KÜHL" in 1994[7]:



Alfwear sells KÜHL products to thousands of retailers nationwide, to online buyers, and to international customers.[8] In addition to gaining the rights to the mark "KÜHL" in 1996,[9] Alfwear owns trademarks for several related words and designs.[10]

Defendants are three corporate entities who, since 2016, have used the mark "IBKÜL"[11]:



IBKUL is a Florida corporation that sells IBKÜL products wholesale to more than 1,400 retailers nationwide.[12] IBCOOL is another Florida corporation that sells IBKÜL products online.[13]

---

[6] *See* DUCivR 7-1(g).
[7] ECF No. 28, at ¶¶ 1, 49; Notice of Opp'n 2, ECF No. 44-2, filed June 2, 2022; *see* Reg. No. 1,990,375, U.S. Pat. & Trademark Off., ECF No. 28-1, filed Mar. 28, 2022.
[8] ECF No. 28, at ¶¶ 59–65 (international sales of over $200 million and shipments of over one million units annually).
[9] *Id.* at ¶ 50.
[10] *Id.* at ¶¶ 52–58 (e.g., "KUHL").
[11] ECF No. 35, at 6–7; *see* Decl. of Jamie Handler ¶¶ 12, 59, ECF No. 44-1, filed June 2, 2022.
[12] Pl. Resp. to Mot. to Dism. 3, ECF No. 44, filed June 2, 2022; ECF No. 44-1, at ¶ 41.
[13] ECF No. 44, at 3; ECF No. 28, at ¶ 23.

UBHOT is a New York corporation that holds the IBKÜL mark and has licensed its use to IBKUL and IBCOOL.[14] In 2016, UBHOT filed an application for "IBKÜL" that Alfwear opposes at the Trademark Trial and Appeal Board.[15]

Litigation in this case started when Alfwear filed its Complaint on November 29, 2021 against UBHOT.[16] On March 28, 2022, Alfwear added Defendants IBKUL and IBCOOL in an Amended Complaint.[17] Alfwear brings four claims against Defendants for the use of "IBKÜL": trademark infringement, federal and common law unfair competition, and dilution.[18] On April 26, 2022, Defendants filed a motion to dismiss for lack of jurisdiction and improper venue and, alternatively, a motion to transfer venue to the Southern District of Florida.[19] Alfwear filed a response on June 2, 2022,[20] and Defendants filed a reply on June 23, 2022.[21]

Defendants offered two declarations in their reply brief.[22] The first declaration is from Anurag Gauba, CEO of UBHOT, IBKUL, and IBCOOL.[23] Gauba discusses IBCOOL's practice of digital advertising with AdWords and reveals how many Utahns have subscribed to marketing emails through IBCOOL's website.[24] In the second declaration, IBKUL's president revises his previous declaration where he said that he was the president of UBHOT.[25] He further asserts that UBHOT does not sell any IBKÜL products and notes the number of Florida retailers carrying

---

[14] ECF No. 44, at 3, 19–20.
[15] *Id.* at 6 (citing ECF No. 28, at ¶¶ 72–76); *see* ECF No. 44-2.
[16] Compl., ECF No. 2, filed Nov. 29, 2021.
[17] ECF No. 28.
[18] *Id.* at ¶¶ 85–119.
[19] ECF No. 35.
[20] ECF No. 44.
[21] Reply Mem. in Supp. of Def. Mot. to Dismiss, ECF No. 48, filed June 23, 2022.
[22] See Reply Decl. of Anurag Gauba, ECF No. 48-1, filed June 23, 2022; Decl. of Jamie Handler, ECF No. 48-2, filed June 23, 2022.
[23] ECF No. 48-1, at ¶ 2.
[24] *Id.* at ¶¶ 4–5.
[25] ECF No. 48-2, at ¶¶ 3–4.

IBKÜL products.[26] Alfwear objected to the declarations, claiming that Defendants "unfairly denied [them] the opportunity to respond."[27] The court finds that a surresponse to the reply is unnecessary. For purposes of this motion, the court will not consider the declarations to the extent that they raise new facts.[28]

## STANDARD

Dismissal is warranted if the court lacks personal jurisdiction over a defendant[29] or venue is improper.[30] For a motion to dismiss, the court must resolve factual disputes in favor of the plaintiff and treat well-pleaded factual allegations as true unless they are disputed by declarations.[31] The plaintiff has the burden of showing that there is personal jurisdiction over a defendant, but when there has been no evidentiary hearing, the plaintiff need only make a prima facie showing to defeat a motion to dismiss.[32] The plaintiff may bring "either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration."[33]

## DISCUSSION

The first issue is whether the court should treat Defendants' motion as a motion to dismiss or for summary judgment. Next, the court will analyze whether there is personal jurisdiction over Defendants and whether venue in the District of Utah is proper. Finally, the court will determine whether transferring venue to the Southern District of Florida is appropriate.

---

[26] ECF No. 48-2, at ¶¶ 5–7.
[27] Pl. Obj. to Def. Reply Decls. 2, ECF No. 49, filed June 30, 2022 (citing *Paugh v. Uintah County*, No. 2:17-cv-01249, 2020 WL 4597062, at *16 (D. Utah Aug. 11, 2020)).
[28] *See Blundell v. Elliott*, No. 1:20-cv-00143, 2021 WL 4473426, at *6 (D. Utah Sept. 30, 2021) ("The court will not . . . consider new facts, arguments, or issues raised in . . . Reply briefs." (citing *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001)).
[29] Fed. R. Civ. P. 12(b)(2); *see Eighteen Seventy LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022).
[30] Fed. R. Civ. P. 12(b)(3); *see Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165–66 (10th Cir. 2010).
[31] *Jayson*, 32 F.4th at 964.
[32] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).
[33] *Jayson*, 32 F.4th at 965.

**A. Defendants' Motion Is for Dismissal.**

Defendants contend that the court should rule on their motion as one for summary judgment because the parties have engaged in some jurisdictional discovery and Defendants offer declarations.[34] Defendants' arguments are unpersuasive. "[W]hen assessing personal jurisdiction under Rule 12(b)(2), the Court may consider matters outside of the pleadings without converting the motion to dismiss to one for summary judgment."[35] Declarations do not automatically result in a motion for summary judgment.[36] Defendants offer no controlling law that stands for the proposition that summary judgment in a case like this should be considered before discovery.[37] Indeed, "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."[38] Here, Alfwear states that discovery has not yet taken place or has not concluded.[39] The court thus applies the motion to dismiss standard.[40]

---

[34] ECF No. 35, at 8–9 (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

[35] *US Magnesium, LLC v. ATI Titanium, LLC*, No. 2:16-CV-1158, 2017 WL 913596, at *2 (D. Utah Mar. 7, 2017); *see Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999) (holding that for a 12(b)(2) or 12(b)(3) motion, it is improper to convert a motion to dismiss into a motion for summary judgment simply because materials are submitted outside of the pleadings); *Velasco Briseno v. Mktg. & Mgmt. Sols., LLC*, No. 18-02482, 2019 WL 2646661, at *2 (D. Kan. June 27, 2019) ("defenses of Rule 12(b)(2), 12(b)(4), and 12(b)(5) are generally not proper grounds for summary judgment").

[36] *See Marcovechhio v. Wright Med. Grp. Inc.*, No. 2:18-cv-274, 2019 WL 1406606, at *2 (D. Utah 2019) ("While generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon, the court may consider affidavits or other written materials on a motion to dismiss for lack of personal jurisdiction." (cleaned up)).

[37] Though Defendants cite *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017), *Old Republic* does not discuss summary judgment. Defendants also cite *Ball* for the proposition that a defendant can move for summary judgment when jurisdiction is in dispute. ECF No. 35, at 8. Yet *Ball* discusses summary judgment "[a]fter discovery." *See* 902 F.2d at 197 ("After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.").

[38] *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1264 (10th Cir. 2006) (alterations in original) (quoting *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000)).

[39] ECF No. 44, at 7–8 ("If the court does hold an evidentiary hearing, Alfwear requests an opportunity to seek discovery from Defendants and third parties before the evidentiary hearing.").

[40] If the jurisdictional facts materially change after any jurisdictional discovery in this action is completed, Defendants may seek leave to challenge jurisdiction.

### B.  Specific Personal Jurisdiction

Defendants contend that there are insufficient minimum contacts to subject them to Utah jurisdiction. The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[41] Utah's long-arm statute extends "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[42] Thus, the analysis is a single due process inquiry.[43] Due process requires that the defendant "purposefully establish[] minimum contacts within the forum state" and that the "assertion of personal jurisdiction . . . comport with 'fair play and substantial justice.'"[44] "Depending on its relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[45] Alfwear argues only specific jurisdiction.[46]

The court applies a two-step test for specific personal jurisdiction. First, the court asks "whether the plaintiff has shown that the defendant has minimum contacts with the forum state."[47] If so, the court asks if the defendant offers a "compelling case that . . . other considerations would render jurisdiction unreasonable."[48]

---

[41] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

[42] Utah Code Ann. § 78B-3-201(3).

[43] *See Old Republic*, 877 F.3d at 903.

[44] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

[45] *Old Republic,* 877 F.3d at 903.

[46] *See* ECF No. 44, at 9–10.

[47] *Old Republic,* 877 F.3d at 903.

[48] *Burger King*, 471 U.S. at 476–77.

### 1.   Minimum Contacts Analysis

The minimum contacts inquiry has two prongs. First, a defendant must purposefully direct its activities at residents of the forum state, and second, the plaintiff's injuries must arise out of the defendant's forum-related activities.[49]

### a.   "Purposeful Direction" Requirement

To satisfy the purposeful-direction prong, a defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state."[50] The contacts must not be "random, isolated, or fortuitous" events.[51] In *Old Republic Insurance Co. v. Continental Motors, Inc.*, the Tenth Circuit identified three frameworks to help courts determine whether an out-of-state defendant can satisfy the purposeful-direction requirement. Two are relevant here: "continuing relationships with forum state residents" and "deliberate exploitation of the forum state market."[52]

The "continuing relationships" framework considers an out-of-state defendant's relationship and obligations with citizens of the forum state.[53] The Supreme Court has found personal jurisdiction over defendants who have "purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State."[54] Although a defendant's mere relationship with a forum-state resident, standing alone, is insufficient to show that it has purposefully directed

---

[49] *Old Republic,* 877 F.3d at 904.
[50] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 253, 253 (1958)).
[51] *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).
[52] *Old Republic,* 877 F.3d at 905.
[53] *Burger King*, 471 U.S. at 473.
[54] *Walden*, 571 U.S. at 285.

activities at the forum, a court may find evidence of jurisdiction through parties' "prior

negotiations and contemplated future consequences, along with the terms of the contract and the

parties' actual course of dealing."[55] "An out-of-state defendant's solicitations of or direct

communications with forum state residents also provide 'some evidence' suggesting purposeful

direction."[56]

      Under the "deliberate exploitation" framework, a plaintiff can show purposeful direction

if the defendant "continuously and deliberately" targets a market.[57] Courts have looked to

whether the defendant has made "substantial and regular sales in the forum state."[58] In the

internet context, personal jurisdiction may lie where a company engages in national

advertising.[59] For instance, the Seventh Circuit held in *uBID, Inc. v. GoDaddy Group, Inc.* that

"a typical business that operates on a national scale with [the defendant's] sales . . . [,] customer

base . . . , and . . . blanket of advertising in [the forum state] would unquestionably be subject to

[specific] personal jurisdiction."[60] But the Tenth Circuit has held that "merely posting

information on the internet does not, in itself, subject the poster to personal jurisdiction wherever

that information may be accessed."[61]

---

[55] *Old Republic*, 877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 479).

[56] *Id.* (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)).

[57] *Id.* at 906 (cleaned up).

[58] *Id.* at 914.

[59] *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010).

[60] *Id.* at 429. *But see be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (no jurisdiction where twenty random state residents created free online dating profiles).

[61] *Id.*; *see Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1225 (10th Cir. 2021) ("Courts are reluctant to say that hosting a website constitutes purposeful direction to every jurisdiction on the globe. Thus, we 'ask whether the defendant intended its online content to create effects specifically in the forum state.'" (internal citation omitted) (quoting *Old Republic*, 877 F.3d at 917 n.35)).

### (1) IBKUL Has Purposefully Directed Activities at Utah.

Alfwear has made a prima facie showing that IBKUL has purposefully directed activities at Utah under the "continuing relationships" framework. For three years, IBKUL has directed the following activities at Utah: (i) shipping IBKÜL products to retailers;[62] (ii) charging and receiving payment;[63] (iii) traveling to Utah to visit retailers that sell IBKÜL products;[64] (iv) developing relationships with Utah retailers;[65] (v) soliciting business;[66] (vi) storing customer information;[67] (vii) receiving returns and exchanges;[68] and (viii) sending marketing information.[69] A Tenth Circuit case is instructive. In *Marcus Food Co. v. DiPanfilo*, the court found personal jurisdiction under the "continuing relationship" framework where a defendant communicated monthly with a plaintiff, received reimbursements, and visited twice over a ten-year period.[70] Similar to *Marcus Food*, IBKUL sold products to Utah retailers over a period of several years.[71] Indeed, IBKUL visited Utah retailers to solicit business, made multiple sales to them, and benefited from sales of clothing with an allegedly similar insignia to Alfwear's mark.[72]

IBKUL argues that its small volume of Utah sales does not support a finding that IBKUL deliberately exploited the Utah market. IBKUL points to the fact that here, it made eleven sales to four different retailers between 2019 and 2021, representing 0.02% of the corporation's total

---

[62] ECF No. 28, at ¶ 39.
[63] *Id.* at ¶¶ 40–41.
[64] *Id.* at ¶ 42.
[65] *Id.* at ¶ 43.
[66] *Id.* at ¶ 44.
[67] *Id.* at ¶ 47.
[68] *Id.* at ¶ 48.
[69] *Id.* at ¶ 38.
[70] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167–68 (10th Cir. 2011); *see Strobel v. Rusch*, 364 F. Supp. 3d 1270, 1279–80 (D.N.M. 2019) (personal jurisdiction where defendant traveled to meet with plaintiffs to secure business and then transacted business in the state related to an infringing trademark).
[71] ECF No. 44, at 18.
[72] ECF No. 28, at ¶¶ 42–46; *see* ECF No. 44, at 18.

sales.[73] But the test for whether a defendant has purposefully directed activities at the forum state is not focused primarily on the success of sales efforts or the overall percentage of a company's sales in the jurisdiction. "[T]he Supreme Court has 'emphasized the importance of the *quality* as opposed to the *quantity* of the contacts, examining whether the contacts resulted from the "purposeful" activity of the defendant.'"[74] The well-pleaded facts and evidence do not suggest that IBKUL's contacts with Utah are "random, isolated, or fortuitous."[75] IBKUL intentionally chose to market to and sell IBKÜL products to Utah retailers where they presumably would then be purchased by Utah residents.[76] That IBKUL's efforts over a three-year period have not yet resulted in a high volume of sales does not prevent the court from finding that IBKUL purposefully directed activities at Utah.

### (2) IBCOOL Has Purposefully Directed Activities at Utah.

The court also finds that Alfwear has met its burden to show that IBCOOL has purposefully directed activities at Utah. IBCOOL's actions are different from those of IBKUL. IBCOOL sells products through an interactive website instead of directly to retailers and it has a higher volume of sales.[77] According to Defendants, IBCOOL made 207 online sales to Utahns between 2019 and 2021, representing 0.43% of its total sales.[78]

---

[73] ECF No. 35, at 9–10.
[74] *Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1228 (D. Utah 2016) (emphases added) (quoting *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994)); *see id.* at 1227–28 (37 sales representing less than one percent of total sales); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 755, 757–58 (7th Cir. 2010) (300 packs of cigarettes); *TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*, 537 F. Supp. 2d 635, 638, 642 (D. Del. 2008) (four orders constituting 0.0000008 percent of total sales for one year).
[75] *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton*, 465 U.S. at 774).
[76] *See* ECF No. 28, at ¶¶ 27–33.
[77] ECF No. 35, at 7.
[78] *Id.* at 10.

IBCOOL allegedly has directed the following activities at Utah: (i) fulfilling orders and shipping products;[79] (ii) charging Utahns and accepting payment;[80] (iii) listing Utah in the drop-down list of shipping destinations;[81] (iv) sending marketing emails;[82] (v) storing customer information;[83] and (vi) processing returns and exchanges.[84] This is not a case of a corporation managing a simple, passive website that has information on where to go to buy merchandise.[85] Here, Utahns could (and did) directly purchase IBKÜL products on IBCOOL's website.[86]

Further, *XMission, L.C. v. Fluent LLC* does not suggest a different result.[87] In *XMission*, the Tenth Circuit did not find personal jurisdiction over an out-of-state defendant that sent thousands of emails to Utah customers.[88] The emails included discount offers for restaurants and retailers.[89] Once the recipient clicked on the offer, they were directed to the defendant's website where they entered personal data and the defendant then collected and sold the personal information.[90] Analyzing personal jurisdiction under the "market exploitation" framework, the court found that there was no evidence that the resulting sales were connected to the defendant's actions or that the emails were designed to attract Utah customers.[91] The court reasoned that "even if it might suffice for personal jurisdiction if [the defendant] earned significant revenue by

---

[79] ECF No. 28, at ¶¶ 27–30.
[80] *Id.* at ¶ 29.
[81] *Id.* at ¶ 33.
[82] *Id.* at ¶¶ 35–38.
[83] *Id.* at ¶ 47.
[84] *Id.* at ¶ 48.
[85] *See Shrader*, 633 F.3d at 1240–41, 1243.
[86] *See Lovesac Co. v. www.lovessac.com*, No. 2:22-cv-00056, 2022 WL 504192, at *2 (D. Utah Feb. 18, 2022); *Shrader*, 633 F.3d at 1240–41.
[87] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020).
[88] *Id.* at 837.
[89] *Id.*
[90] *Id.*
[91] *Id.* at 850.

selling consumer data obtained from recipients of offending emails who entered their personal data . . . there is nothing in the record indicating that even one recipient of the offending emails provided such information."[92]

Here, on the other hand, there is a direct connection between IBCOOL's website and its sales. IBCOOL reaped the benefit of over 200 online sales because its website allowed Utahns to place orders and receive shipments.[93] "These collective contacts establish that [IBCOOL] purposefully availed [it]self of the privileges of doing business in [Utah]."[94]

IBCOOL asserts that because Utahns reached out to IBCOOL's website, there can be no showing of purposeful direction.[95] In support, IBCOOL cites two Seventh Circuit cases for the proposition that forum residents' random online activities or the bare existence of a website is insufficient to prove purposeful direction.[96] This case involves more. IBCOOL allegedly sent marketing emails to Utahns,[97] listed Utah in its list of shipping destinations,[98] charged Utahns and accepted payment,[99] fulfilled orders and shipped products to Utah,[100] stored Utah customers' information,[101] and processed returns and exchanges for Utahns.[102] These activities over the

---

[92] *Id.*
[93] ECF No. 35, at 10.
[94] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).
[95] *See* ECF No. 48, at 11.
[96] *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (two allegedly misleading emails sent to a customer list that included forum-state residents and an interactive website was not enough to show minimum contacts); *be2 LLC*, 642 F.3d at 558–59 (rejecting personal jurisdiction when 20 people from the forum state created free dating profiles).
[97] ECF No. 28, at ¶¶ 37–38.
[98] *Id.* at ¶ 33.
[99] *Id.* at ¶¶ 28–29.
[100] *Id.* at ¶¶ 27, 30.
[101] *Id.* at ¶ 47.
[102] *Id.* at ¶ 48.

course of multiple years are enough to show that IBCOOL purposefully directed sales at this forum through an interactive website.

In a similar context, this court found personal jurisdiction in *A.L. Enterprises, Inc. v. Sebron*.[103] The defendant in *Sebron* ran an interactive website and allowed guests—including Utahns—the ability to make purchases with a credit card.[104] The court concluded that there was personal jurisdiction because the defendant "use[d] his website to reach a large number of potential buyers, including those in Utah, and benefit[ted] from that exposure."[105] IBCOOL has also used a website to reach potential customers, including Utahns, and benefitted.[106] Like the seller in *Sebron*, IBCOOL "cannot expect to avail [itself] of the benefits of the internet-created world market that [it] purposefully exploit[s] and profit[s] from without accepting the concomitant legal responsibilities that such an expanded market may bring with it."[107] Finally, the court rejects IBCOOL's arguments regarding its purportedly low volume of sales for the same reasons above.[108]

### (3) UBHOT Has Not Purposefully Directed Activities at Utah.

Alfwear has not demonstrated that UBHOT purposefully directed activities at Utah. There are insufficient well-pleaded allegations that UBHOT has advertised, sold, or shipped allegedly infringing products in Utah.[109] UBHOT allegedly holds intellectual property leased by

---

[103] *A.L. Enters., Inc. v. Sebron*, No. 2:08CV536, 2008 WL 4356958 (D. Utah Sept. 17, 2008).
[104] *Id.* at *2.
[105] *Id.*
[106] ECF No. 28, at ¶¶ 24–34.
[107] *Sebron*, 2008 WL 4356958, at *2 (quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006)).
[108] *See Shrader*, 633 F.3d at 1240 (focusing on whether the defendant directs its activity at the forum state).
[109] The Amended Complaint contains a few "information and belief" allegations that UBHOT sent unspecified catalogs, magazines, or products to Utah, but no supporting facts regarding amounts, dates, or any other information is provided, and Alfwear does not even reference its general allegations in its argument. *See* ECF No. 28 at ¶¶ 15, 17–18.

IBKUL and IBCOOL.[110] Alfwear claims that because a UBHOT declarant stated that UBHOT sells IBKÜL products to "1,400 retailers nationwide," then UBHOT must have shipped products to Utahns.[111] This is an insufficient nexus. Alfwear makes no showing that any of the 1,400 retailers that UBHOT purportedly sells to are in Utah.

Alfwear also contends that UBHOT's ability to control the use of the IBKÜL mark and its licensing to IBKUL and IBCOOL creates minimum contacts.[112] In support, it cites *Alcon Vision, LLC v. Lens.com, Inc.* for the proposition that a "licensing agreement for intellectual property with a licensee that operates in the forum state can, in certain instances, give rise to personal jurisdiction over the licensor."[113] Some courts have found that the jurisdictionally relevant features of a licensing agreement include factors like "whether the licensing agreement is exclusive; whether the licensing agreement creates continuing obligations for the licensor in the forum state . . . ; and whether the licensor retains control over the licensee's sales and marketing activities."[114] Alfwear alleges, on information and belief, that UBHOT has the "right to exercise control over the use of the IBKÜL mark" and the "right to exercise control over IBCOOL's and IBKUL's sales and marketing activities."[115] But the Amended Complaint says nothing about the relevant features of the licensing agreement between the Defendants. In sum, Alfwear's sparse allegations regarding UBHOT are insufficient to show minimum contacts with Utah and establish that the court has personal jurisdiction over UBHOT.

---

[110] *See* ECF No. 35, at 7; ECF No. 35-1, at ¶¶ 4, 13.
[111] ECF No. 44, at 19.
[112] *Id.*
[113] *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-407, 2020 WL 4810778, at *4 (E.D.N.Y. Aug. 11, 2020).
[114] *Id*.
[115] ECF No. 28, at ¶¶ 79–80.

### b. "Arising Out of" Requirement

The second prong of the minimum contacts inquiry requires that a plaintiff's injuries "arise out of" a defendants' "forum-related activities."[116] In other words, "[t]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[117] "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant[s'] unconnected activities in the State."[118]

Alfwear adequately asserts that some of its alleged injuries have a nexus to IBKUL's and IBCOOL's forum-related activities. The main purpose of Alfwear's suit is trademark infringement.[119] Defendants do not contest the fact that IBKUL and IBCOOL sold IBKÜL products in Utah.[120] Defendants, however, cite *Walden v. Fiore* for the proposition that a plaintiff must show that defendants have a substantial connection with the forum state.[121] In *Walden*, the court found that there was no personal jurisdiction because none of the alleged wrongful conduct occurred in the forum state.[122] Defendants argue that Alfwear has not shown that Utah was the center of the purported infringing actions.[123] But a plaintiff need only demonstrate that a "claimed injury resulted from the defendant's forum-related activities" for there to be minimum

---

[116] *Old Republic*, 877 F.3d at 908.
[117] *Ford Motor Co.*, 141 S. Ct. at 1025 (alteration in original) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017)).
[118] *Bristol-Myers Squibb*, 137 S. Ct. at 1776.
[119] *See* ECF No. 28, at ¶¶ 85–104.
[120] *See* ECF No. 35, at 14; ECF No. 28, at ¶ 6.
[121] *See* ECF No. 48, at 7.
[122] *Walden v. Fiore*, 71 U.S. 277, 288 (2014).
[123] ECF No. 48, at 8.

contacts.[124] Here, Alfwear has met its prima facie burden of showing that Defendants have created a substantial connection with Utah by marketing and selling IBKÜL products through Utah retailers and online to Utah residents.[125]

The court rejects as unripe Defendants' argument that Alfwear cannot prove injury. Defendants contend that Alfwear has not shown confusion between the parties' marks, which they imply is required for trademark infringement.[126] Defendants cite a 2017 declaration where a traveler stated that she was not confused about whether KÜHL goods seen in Charlotte were the same as IBKÜL goods in Key West.[127] Also, Defendants point to testimony in the underlying trademark application litigation where a witness was not aware of confusion between Alfwear's and Defendants' marks.[128] But evidence of "actual confusion . . . is not necessary to establish infringement."[129] More importantly, the fact that Defendants have some evidence pertaining to whether Alfwear has been injured does not decide the jurisdictional question—the question of whether Alfwear can support its injury claims is a matter for another day.

### 2. Jurisdiction Over IBKUL and IBCOOL Would Not Offend Traditional Notions of Fair Play and Substantial Justice.

Under the second prong of the test for personal jurisdiction, the court asks if jurisdiction would offend "traditional notions of fair play and substantial justice."[130] Courts usually consider

---

[124] *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020), *cert. denied,* 141 S. Ct. 2793 (2021) (citing *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013)).

[125] *See* ECF No. 28, at ¶¶ 25–48.

[126] *See* ECF No. 35, at 15.

[127] Decl. of Lori Gildea ¶¶ 8–11, ECF No. 35-5, filed Apr. 26, 2022 (emphasis added); *see* ECF No. 35, at 15.

[128] ECF No. 35, at 15.

[129] *Harris Rsch., Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1167 (D. Utah 2007) (citing *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 556 (10th Cir.1998)).

[130] *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe*, 326 U.S. at 316).

16

five factors, only four of which apply here[131]: (1) the burden on defendants, (2) the state's interests in deciding the matter, (3) the plaintiff's interest in getting "convenient and effectual relief," and (4) the judicial system's interest in attaining "the most efficient resolution of controversies."[132]

For the first factor, the burden on the defendant of litigating the case in a foreign forum is the "primary concern" in determining the reasonableness of personal jurisdiction.[133] This factor is designed to prevent the filing of claims in a distant forum where the burden of appearing is difficult.[134] The second factor is the forum state's interest in adjudicating the dispute. "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[135] The third factor is whether a plaintiff may receive convenient and effective relief in another forum.[136] "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[137] The final factor is whether the forum state is the most efficient place to litigate the dispute.[138] Key to this inquiry is the location of witnesses, where the alleged harm underlying the lawsuit occurred, which forum's substantive law governs the case, and whether exercising jurisdiction is necessary to prevent piecemeal litigation.[139]

---

[131] The fifth factor, "shared interest of the several states . . . in furthering fundamental social policies," does not apply because the issue here is federal trademark law. *Id.*
[132] *Id.* (citing *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1095 (10th Cir. 1998)).
[133] *OMI Holdings*, 149 F.3d at 1096.
[134] *Id.*
[135] *Id.* (citing *Burger King*, 471 U.S. at 483).
[136] *Id.* at 1097.
[137] *Id.*
[138] *Id.*
[139] *Id.*

Defendants first argue that litigating in Utah would be onerous.[140] Of course, southern Florida would be more convenient for Defendants, but IBKUL and IBCOOL allegedly conduct business nationwide and IBKUL has purportedly traveled to Utah to conduct business.[141] Defendants' principal argument, that Utah is two time zones away,[142] is of little moment on these facts. Second, Defendants contend that Utah has no interest in the matter because of Defendants' low number of sales.[143] Yet Utah has a sufficiently strong interest in retaining jurisdiction because Alfwear is located in Utah and claims that an out-of-state actor has infringed its trademark.[144] Indeed, a "State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."[145] Third, Defendants assert that Alfwear would get better relief in the Southern District of Florida, "where there are no personal jurisdiction and venue issues."[146] Because personal jurisdiction and venue are proper here for IBKUL and IBCOOL, Alfwear's interests are sufficiently met. If Alfwear prefers a single case against all three Defendants, it can move for transfer or dismiss and refile its claims.[147] Last, Defendants argue that the Southern District of Florida is more convenient because IBKUL's largest market is there along with "numerous retailers" as "potential third-party witnesses."[148] However, Alfwear is in Utah along with its "officers, employees, and documents" relevant to its trademark infringement case.[149] And since Defendants sell their

---

[140] *See* ECF No. 35, at 16.
[141] *See* ECF No. 28, at ¶¶ 42–43.
[142] *See* ECF No. 35, at 11.
[143] *See id.* at 16.
[144] *See id.* at 19–20; ECF No. 28, at ¶ 1.
[145] *Burger King*, 471 U.S. at 473 (cleaned up).
[146] ECF No. 35, at 17.
[147] *See* ECF No. 44, at 25.
[148] *Id.*
[149] *Id.* at 22.

IBKÜL products in Utah,[150] both via a website and through retailers, there are also potential Utahns to serve as third-party witnesses. Additionally, because Defendants do not specifically identify who the Florida third-party witnesses would be, the court is not persuaded that pointing to unnamed "potential third-party witnesses" materially changes the analysis.

Alfwear has met its prima facie burden of showing that IBKUL and IBCOOL have the constitutionally required contacts with Utah. And IBKUL and IBCOOL have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[151] For these reasons, the court has specific personal jurisdiction over IBKUL and IBCOOL.

### C. Venue Is Proper for IBKUL and IBCOOL.

Defendants also move to dismiss for improper venue.[152] Venue is proper in a "district in which a substantial part of the events or omissions giving rise to the claim occurred."[153] "[T]he [p]laintiff bears the burden of establishing proper venue."[154] To determine whether venue is proper, the court conducts a two-part analysis. First, the court "examines the nature of the plaintiff's claims and the acts or omissions underlying those claims," and second, the court "determines whether substantial events material to those claims occurred in the forum district."[155]

---

[150] ECF No. 28, at ¶ 25.
[151] *Pro Axess*, 428 F.3d at 1280.
[152] Fed. R. Civ. P. 12(b)(3).
[153] 28 U.S.C. § 1391(b)(2).
[154] *C.R. Bard, Inc. v. Smiths Med. ASD, Inc.*, No. 2:12-cv-36, 2020 WL 6710425, at *2 (D. Utah Nov. 16, 2020).
[155] *PopSockets LLC v. Online King LLC*, No. 19-cv-01277, 2019 WL 7168661, at *5 (D. Colo. Dec. 23, 2019) (citing *Bartile Roofs*, 618 F.3d at 1166); *see* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").

For the first prong, Alfwear brings claims of trademark infringement, unfair competition, and dilution against Defendants.[156] Alfwear claims that Defendants' use of the IBKÜL mark harms Alfwear because it is likely to cause potential customers to think that IBKÜL products are associated with Alfwear.[157] Specifically, Alfwear asserts that their brand is widely sold;[158] that Defendants' mark, "IBKÜL," is similar to Alfwear's mark, "KÜHL";[159] that the two products are sold in overlapping markets;[160] and that Defendants' actions are likely to lead to confusion among Alfwear customers.[161]

Under the second prong, Alfwear must therefore show that "substantial events material to" these claims took place in Utah.[162] In support of its argument, Alfwear cites *PopSockets LLC v. Online King LLC*. In *PopSockets,* a plaintiff brought a Lanham Act claim in Colorado for the unauthorized sale of trademarked goods.[163] Even though the defendant did not sell all of his product in Colorado, the court found that venue was proper because the defendant used a website to sell at least a portion of allegedly infringing products to Coloradans in the regular course of business.[164] The court finds *PopSockets* persuasive under the facts of this case. Defendants assert that a substantial part of the events did not occur in Utah because Defendants had a low volume

---

[156] ECF No. 28, at ¶¶ 85–119.

[157] ECF No. 44, at 23; *see* 15 U.S.C. § 1125(a)(1) ("any person who . . . uses in commerce any . . . term, name, symbol, or device . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . of such person with another person . . . shall be liable in a civil action."); *Austl. Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006).

[158] *See* ECF No. 28, at ¶¶ 59–64.

[159] *See id.* at ¶¶ 49–50, 72–73.

[160] *See id.* at ¶¶ 25–48, 61–66.

[161] *Id.* at ¶ 102; *see* 15 U.S.C. § 1114(1).

[162] *PopSockets*, 2019 WL 7168661, at *5–6 ("[I]n a trademark suit brought under the Lanham Act, a substantial part of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or in many.") (alteration in original) (quoting *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009)).

[163] *Id.* at *1; *see* 15 U.S.C. § 1051 *et seq.*

[164] *PopSockets*, 2019 WL 7168661, at *3, 6.

of Utah sales.[165] Defendants' Utah sales may not have been substantial in terms of its total sales,

but that does not prevent the sales from being substantial respecting the Utah market.[166]

"[V]enue is not limited to the district with the *most* substantial events or omissions."[167] Given

that Defendants have sold a number of allegedly infringing products to Utahns online and

through retailers over several years,[168] substantial events material to Alfwear's claims have taken

place in Utah.

Defendants cite three cases for the proposition that substantial events cannot occur in a

forum when the dealings there are only a fraction of total sales.[169] All three cases are inapposite.

First, the plaintiff in *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant* filed suit in the

District of Columbia even though Noxell's operations were in Texas.[170] The defendant moved to

dismiss or transfer venue to the Northern District of California.[171] The court reasoned that the

plaintiff chose venue in the District of Columbia "simply to suit its own convenience" and that

venue in the District of Columbia was "barely plausible in terms of the accessibility of relevant

evidence."[172] Unlike the plaintiff in *Noxell Corp.*, Alfwear brought the instant action where it is

incorporated,[173] and access to evidence weighs in favor of Alfwear because its operations are in

Utah and Defendants have sold IBKÜL products in Utah through retailers and online.[174]

---

[165] ECF No. 35, at 17–18.
[166] *Id.* at 9–10.
[167] *Bartile Roofs*, 618 F.3d at 1165 (emphasis in original); *see Adidas Am., Inc. v. Cougar Sport, Inc.*, 169
F. Supp. 3d 1079, 1095 (D. Or. 2016) ("Venue may be proper even where the defendant sells only a small amount of
merchandise into the forum."); 28 U.S.C. § 1391(b)(2).
[168] *See* ECF No. 28, at ¶¶ 25–48.
[169] *See* ECF No. 35, at 18–19.
[170] *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 314 (D.C. Cir. 1985).
[171] *Id.*
[172] *Id.* at 317.
[173] ECF No. 28, at ¶ 1.
[174] *See* ECF No. 44, at 5.

Second, in *Delta Sigma Theta Sorority Inc. v. Bivins*, a plaintiff sought to enjoin defendants from selling clothing that allegedly had infringing marks.[175] The court found that despite discovery, the plaintiff could show only two sales by defendants and thus the court held that the "minuscule number of sales in this district, together with the manner of those sales through a generally accessible website, falls far short of the implicit finding . . . that venue is appropriate."[176] Here, Defendants apparently have sold multiple IBKÜL products to four Utah retailers through IBKUL and 207 IBKÜL products to Utahns directly online through IBCOOL.[177]

Finally, Defendants cite *Detroit Coffee Shop Co. v. Soup for You, LLC* for the proposition that venue is improper where there is a low number of sales.[178] In *Detroit Coffee Shop*, the plaintiff brought a trademark infringement claim in New York against an online seller of coffee products that bore a similar mark.[179] The seller moved to dismiss or transfer venue to the Eastern District of Michigan, "the home city for which both companies are named."[180] The court found that the seller's passive website was not sufficiently targeted at forum residents because the seller "ha[d] apparently done nothing else to market, advertise, or otherwise target sales into" New York but letting the user ship to all fifty states.[181] The same is not true here, where Defendants are alleged to have marketed to Utah residents, sold and shipped products to Utah retailers, and sold and shipped products directly to Utah residents, among other actions. Additionally, *Detroit*

---

[175] *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 209 (D.D.C. 2014).
[176] *Id.* at 218.
[177] ECF No. 35, at 9–10.
[178] *Detroit Coffee Shop Co., LLC v. Soup for You, LLC*, No. 16-CV-9875, 2018 WL 941747 (S.D.N.Y. Feb. 16, 2018).
[179] *Id.* at *1.
[180] *Id.*
[181] *Id.* at *4.

*Coffee Shop* also found that "venue by substantial sales" only "requires, at minimum, that the plaintiff allege some non-nominal [number] of sales."[182] Here, IBCOOL by itself has made 207 direct online sales to Utahns in three years, while IBKUL has sold products to Utah retailers, who then presumably sell to Utah residents.[183] As a result, none of Defendants' cited cases support the argument that venue is improper here.

### D. The Court Denies Defendants' Request to Transfer Venue.

Defendants ask in the alternative for the court to transfer venue to the Southern District of Florida. A court may transfer a civil action to another district where the case may have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice."[184] The movant has the burden to show that the current forum is inconvenient.[185] "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."[186] The court will give less deference if the plaintiff resides outside of the district or the relevant facts have "no material relation or significant connection to the plaintiff's chosen forum."[187] Merely shifting the inconvenience to the other side is not a valid justification.[188]

Defendants, who have the burden of showing inconvenience, offer no specific arguments as to why Utah is inconvenient.[189] Even if the court assumes that Defendants rely on an earlier argument that "litigating in the Southern District of Florida would be much less burdensome than

---

[182] *Id.* at *3.
[183] ECF No. 35, at 10.
[184] 28 U.S.C. § 1404(a).
[185] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).
[186] *Bartile Roofs*, 618 F.3d at 1168 (cleaned up).
[187] *Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)); *see Nelson v. Aramark Sports & Ent. Servs.*, LLC, No. 2:14-cv-00474, 2015 WL 1014579, at *1 (D. Utah Mar. 9, 2015) (directing the court to consider factors similar to a *forum non conveniens* analysis).
[188] *Bartile Roofs*, 618 F.3d at 1167.
[189] *See* ECF No. 35, at 20.

litigating in the District of Utah that is two time zones away,"[190] "[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change in venue."[191] Nor does the earlier argument about unspecific third-party witnesses change the analysis—there would be third-party witnesses in both forums. And a trial in the Southern District of Florida is not automatically more "easy, expeditious and economical" just because Defendants are in Florida.[192] Thus, the court denies the motion to transfer venue.

**ORDER**

Accordingly, Defendants' motion to dismiss is DENIED as to IBKUL Corp. and IBCOOL Inc. and GRANTED as to IBKUL UBHOT Ltd. Defendants' motion to transfer venue to the Southern District of Florida is DENIED.


Signed August 25, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[190] *Id.* at 11.
[191] *Cricut, Inc. v. Enough for Everyone, Inc.*, No. 2:21-CV-601, 2022 WL 798877, at *1 (D. Utah Mar. 16, 2022) (quoting *Bartile Roofs*, 618 F.3d at 1167).
[192] *Id.*